UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CAROL CASCIO,

                Plaintiff,

    -against-

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
10-CV-5666 (FB)

*Appearances:*
*For the Plaintiff:*
MAX D. LEIFER, ESQ.
214 Sullivan Street, Suite 3C
New York, NY 10012

*For the Defendant:*
LORETTA E. LYNCH, ESQ.
United States Attorney
ARTHUR SWERDLOFF, ESQ.
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

       Plaintiff Carol Cascio seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for benefits under the Social Security Act (the "Act"). Both parties move for judgment on the pleadings. For the reasons set forth below, the Commissioner's decision is affirmed; accordingly, the Commissioner's motion is granted and Cascio's complaint is dismissed.

I

       Cascio claims that she suffers from a variety of impairments, including neck, leg and lower back pain, herniated discs, hearing loss, depressive disorder and anxiety disorder. She filed an application for supplemental security income on April 16, 2008. After the Social

Security Administration denied her application, Cascio requested a hearing before an Administrative Law Judge ("ALJ").

As an initial matter, the ALJ found that Cascio meets the insured status requirements of the Act. Next, applying the familiar five-step process, the ALJ first found that Cascio had not engaged in substantial gainful activity since February 12, 2007. Second, the ALJ found that three of Cascio's impairments– back impairment, neck impairment and depressive disorder– "barely meet the *de minimus* test" for severity. A.R. at 13. The ALJ found that Cascio's remaining impairments, such as anxiety and hearing loss, were not medically determinable "severe impairments." *Id.* Third, the ALJ considered whether Cascio's impairments met the criteria listed in 20 CFR Part 404, Subpart P, Appendix 1 and found that they did not. The ALJ stated that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." A.R. at 13. Fourth, the ALJ determined that Cascio had the residual functional capacity ("RFC") to perform at least the full range of sedentary work. Finally, the ALJ found that there are jobs that exist in significant numbers in the national economy that Cascio can perform. The ALJ relied upon the Medical-Vocational Guidelines contained in 20 CFR Part 404, Subpart P, Appendix 2 as a framework for his decision-making. He found that based upon Cascio's age, education and previous work experience, Medical-Vocational Rule 201.28 compelled a finding that Cascio was not disabled.

On January 19, 2010, the ALJ issued his decision concluding that Cascio is not disabled within the meaning of the Act. On October 29, 2010 the Appeals Council denied her

request for review, rendering the Commissioner's decision to deny benefits final. Cascio timely sought judicial review.

## II

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While the plaintiff bears the burden of proof for the first four steps of the inquiry, at step five there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

Cascio challenges the Commissioner's decision on the following grounds: (1) that the ALJ violated the treating physician rule when he did not give controlling weight to the opinion of Cascio's treating physicians, Dr. Vinod Dhar, Dr. Robert Donadt and Dr. Khalid Hassan, or to the opinions of Cascio's treating physical therapists, Michael DiStefano and Rodene Ivan Cortes; (2) that the ALJ's RFC evaluation was not supported by substantial evidence because the medical record reflected Cascio's "inability to deal with stress"; (3) that the ALJ's determination that some of Cascio's impairments were not "severe impairments" is not supported by substantial evidence because he "chose to ignore" some of Cascio's physical impairments; (4) that the ALJ failed to list specific jobs in the national economy that

3

Cascio can perform; and (5) that the ALJ improperly rejected Cascio's testimony regarding her subjective pain and suffering. Pl's Mem. of Law at 14.

**A. Treating physician rule**

According to the treating physician rule, "the opinion of a claimant's treating physician as to the nature or severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory or diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404. 1527 (d)(2)). "When the opinions of treating physicians are rejected, the Commissioner must 'always give good reasons. . . for the weight' given to those opinions." *Schaal v. Apfel*, 134 F.3d 496, 503-04 (2d Cir. 1998) (quoting 20 C.F.R. § 416.927(d)(2)).

Cascio contends that the ALJ "failed to provide any adequate basis" for considering the opinion of a consulting physician, Dr. Lauree Mitchell, rather than the opinion of Dr. Dhar. Cascio further argues that the ALJ "essentially ignore[d]" the opinions of her other treating physicians, Dr. Donadt and Dr. Hassan. Pl's Mem. of Law at 14. Finally, Cascio contends that the ALJ incorrectly refused to consider the findings of two treating physical therapists.

Contrary to Cascio's argument, the ALJ did provide good reasons for his decision to not give controlling weight to Dr. Dahr's opinion about Cascio's mental limitations, explaining that Dr. Dahr's opinions were inconsistent with the bulk of clinical findings and objective testing in the record. The ALJ further stated that Dr. Dahr's opinion on Cascio's mental limitations was contradicted by his own statement that Cascio could "manage her

4

benefits." A.R. at 19. In general, "the opinion of the treating physician is not afforded controlling weight where... the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran*, 262 F.3d at 32; *see Veino v. Barnhart* 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve"). The ALJ is not obligated to consider the treating physician's opinion in a vacuum; where, as here, the complete record contradicts that physician's findings, the ALJ may properly deny the treating physician's opinion controlling weight.

In addition, the ALJ did not reject the opinion of Dr. Donadt, and briefly summarized the available medical records from the two-year period during which Dr. Donadt treated Cascio. Although Cascio takes issue with the ALJ "mentioning [Dr. Donadt] in only three lines of his decision,"the opinion clearly shows that the ALJ reviewed Dr. Donadt's assessment and took those medical records into account. Pl's Mem. of Law at 14. Dr. Donadt treated Cascio for only one of her many ailments, cervical and lumbar spine derangement; it was reasonable for the ALJ to spend only a short portion of his decision reviewing these medical records, and there is no evidence that the ALJ failed to afford Dr. Donadt's opinion an appropriate level of deference.

Cascio also states that the ALJ erred in not mentioning the medical opinion of Dr. Hassan, who examined Cascio on two separate occasions in 2005 and 2007, and argues that the ALJ should have given Dr. Hassan's opinion considerable weight as that of a treating physician. The ALJ's opinion clearly shows that he carefully examined the full medical record, which would have included Dr. Hassan's medical evaluations and a 2005 echocardiogram.

5

The ALJ was not obligated, however, to view Dr. Hassan as a treating physician. "Treating physician" has been defined as a "claimant's. . . own physician. . . who has provided the [claimant] with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Schisler v. Bowen*, 851 F. 2d 43, 26 (2d Cir. 1988). "The nature of the physician's relationship with the patient, rather than its duration or its coincidence with a claim for benefits, is determinative." *Id.* The ALJ decided that two isolated visits, approximately one year apart, did not constitute an "ongoing treatment" relationship rising to the level necessary for Dr. Hassan to qualify as a treating physician. It was reasonable for him to do so, and consequently the ALJ did not need to give Dr. Hassan's opinions controlling weight or to describe them in detail in his written opinion.

Finally, the ALJ was not obligated to give controlling weight to the opinions of the physical therapists, DiStefano and Cortes. A physical therapist is not an "acceptable medical source" as defined in the regulations. 20 C.F.R. § 404.1513. Their opinions are therefore considered evidence from an "other source"; although they are entitled to some weight, particularly when there is a longstanding treatment relationship, they are not entitled to the same deference as the opinion of a treating physician. 20 C.F.R. § 404.1513(d)(1); *see Rivera v. Bowen*, 665 F. Supp. 201, 206 (S.D.N.Y. 1987) (holding that the opinions of physical therapists must be accorded at least some weight). The Second Circuit has held that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him; under no circumstances can the regulations be read to require the ALJ to give controlling weight to [the other source's] opinion." *Diaz v. Shalala*, 59 F. 3d 307, 313-14 (2d Cir. 1995). The ALJ considered the opinions of the physical therapists

and, in light of the other medical evidence in the record, properly found that those opinions should not receive substantial weight.

**B. Substantial evidence of RFC**

Cascio contends that the ALJ erred in finding that she could perform sedentary work because the record evidence, particularly the opinion of consulting physician Dr. Mitchell, shows that Cascio "was virtually incapacitated" and incapable of traveling to a job or handling stress "due to her mental state." Pl's Mem. of Law at 14. Cascio's assertion that the ALJ "ignored" her mental health problems is inaccurate. In fact, it is evident from the ALJ's opinion that he considered Cascio's mental impairments in great detail: the ALJ describes medical records regarding Cascio's depression and problems dealing with stress, including Dr. Mitchell's report and a Social Security Administration Psychiatric Review form from a consulting physician. At Cascio's hearing, the ALJ questioned her about her mental impairments and her ability to perform daily tasks. The ALJ's determination that Cascio was capable of performing basic daily tasks in spite of her mental impairments was clearly based upon a reasonable evaluation of the record as a whole. *See Dumas v. Schweiker*, 712 F.2d 1545, 1551, 1553 (2d Cir. 1983) (an ALJ determination was supported by substantial evidence where the decision contained "a complete and detailed recitation of the medical records and reports").

**C. Substantial evidence of severe impairments**

Cascio also contends that the ALJ's determination that not all of her health problems constituted "severe impairments" was erroneous, because the list of alleged impairments considered by the ALJ "is not complete." Pl's Mem. of Law at 13. Cascio claims

7

that the ALJ ignored physical conditions such as "depression, cervical and lumbar radiculopathy and . . . herniated and bulging discs." *Id.* at 14. This is incorrect, first, because the ALJ not only considered evidence of Cascio's depression, but also found that it did rise to the level of a "severe impairment." The ALJ also acknowledged that the record shows Cascio suffered from myriad medical conditions, listing some of them. The absence of some of Cascio's medical conditions from the ALJ's list does not mean that the ALJ ignored them. "Where, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Monguer v. Heckler*, 722 F. 2d 1033, 1040 (2d Cir. 1983). Looking at the ALJ's opinion as a whole, it is evident that he carefully reviewed the contents of the entire medical record, and considered all of Cascio's ailments.

### D. Jobs in the national economy

Cascio correctly states that the ALJ did not "set forth specific jobs in the national economy" that she could perform. Pl's Mem. of Law at 15. Because the ALJ relied upon the Medical-Vocational Guidelines rather than the testimony of a vocational expert, however, he was not required to identify specific jobs. *See Heckler v. Campbell*, 461 U.S. 458, 470 (1983) (holding that the ALJ may rely upon the Medical-Vocational Guidelines and that, in those cases, it is not necessary to "introduce evidence of specific available jobs").

The ALJ properly relied upon the Medical-Vocational Guidelines, which take into account a claimant's RFC in conjunction with her age, education and work experience to determine whether she can engage in any substantial gainful work existing in the national

economy. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). Use of the Medical-Vocational Guidelines is appropriate where non-exertional limitations– limitations that affect a claimant's ability to meet job demands other than strength demands– do not "significantly limit the range of work permitted by [her] exertional limitations." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986). The ALJ acknowledged that Cascio's mental impairments constitute non-exertional limitations, but also stated that "claimant's ability to perform all or substantially all of the requirements of the sedentary level of work has not been impeded by" those limitations. A.R. at 22. This determination is reasonable and consistent with the record as a whole.

**E. Subjective pain and suffering**

Cascio contends that the ALJ "failed to establish the basis for. . . rejecting" her testimony about her ability to perform basic tasks. Pl's Mem. of Law at 15. There is a two-step inquiry to evaluate the credibility of a claimant's subjective complaints. *See* 20 C.F.R. § 404.1529(c). First, the ALJ must determine whether the medical signs or laboratory findings show that the claimant has a medically determinable impairment or impairments that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 404.1529(c)(1). Second, the ALJ must evaluate the intensity, persistence and limiting effects of the claimant's symptoms, which requires the ALJ to make a credibility finding based on the entire record. 20 C.F.R. § 404.1529(c)(1)-(4).

The ALJ's opinion demonstrates that he correctly evaluated Cascio's subjective complaints. The ALJ reviewed in detail the full medical record, spending several pages of his opinion summarizing the treatment records submitted by various physicians who treated Cascio for her numerous health problems over the course of more than seven years. He then

evaluated the existence of Cascio's medically determinable impairments based on those records, acknowledging Cascio's back, neck and psychiatric impairments.

He also considered Cascio's hearing testimony concerning her symptoms and limitations, and found that her testimony was not corroborated by the objective medical evidence. Specifically, the available medical records show that Cascio's neck and back strength were "normal," and that her depressive disorder did not limit her concentration, judgment or cognitive functioning; all of these functional capabilities are inconsistent with Cascio's professed inability to work. A.R. at 18. The ALJ also noted that the medical records show a "conservative" amount of medical treatment, with no hospitalizations or unusual prescription medications, and that Cascio could engage in a variety of daily activities such as cooking, traveling by bus and socializing with friends. Consequently, the ALJ's determination– that Cascio's testimony about the severity of her limitations was inconsistent with the available medical evidence– was reasonable and based upon a thorough review of the entire record.

### III

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted, the final decision to deny benefits under the Act is affirmed, and Cascio's complaint is dismissed.

**SO ORDERED.**

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
January 17, 2012